UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MELISSA McKENNA,

               Plaintiff,                        Case No. 13-cv-12687

v.                                        Honorable Thomas L. Ludington

AETNA LIFE INSURANCE COMPANY and
DOW CORNING CORPORATION LTD PLAN,

               Defendants.

_____/

**ORDER DENYING PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE PLAN ADMINISTRATOR, GRANTING DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE PLAN ADMINISTRATOR, GRANTING DEFENDANT'S MOTION TO STRIKE, AND DISMISSING PLAINTIFF'S COMPLAINT WITH PREJUDICE**

     Melissa McKenna appeals the Dow Corning Corporation LTD Plan administrator's decision to partially deny her long-term disability benefits. She initiated this suit, governed by ERISA, on June 28, 2013. ECF No. 1, Pl. Compl. She claims that she was improperly denied long-term disability benefits by Co-Defendant Aetna Life Insurance Company, plan administrator of Co-Defendant Dow Corning Corporation Long-Term Disability Plan ("Plan").

     On July 31, McKenna filed a motion to reverse the Plan's decision to terminate her benefits. ECF No. 36, Pl. Mot. Reverse. She claims that the Plan improperly credited her treating physician's opinion about her disability, incorrectly revoked her benefits, and erred in its determination that she can perform her occupation. On the same day, the Plan cross-moved to affirm the administrator's decision. ECF No. 37, Def. Mot. Affirm. The Plan contends that the administrator's decision was proper because there is no evidence supporting McKenna's continued disability after February 23, 2013.

On August 25, 2014, the Plan moved to strike Exhibit A to Plaintiff's motion to reverse. ECF No. 41, Def. Mot. Strike. Exhibit A purports to be a summary and chronology of relevant medical events from McKenna's administrative record. The Plan claims that the exhibit is evidence that may not be considered under Sixth Circuit case law on ERISA appeals. The Plan claims that if the exhibit is not part of the record, it must be construed as an expansion of Plaintiff's brief. It argues that such an expansion violates the local rules. McKenna responds that it is merely an aid for the Court, and if it is deemed a violation of the local rules, she asks that the Court grant her a page enlargement on her brief in support of her motion to reverse. ECF No. 43, Pl. Resp.

## I.

McKenna has been employed with Dow Corning since January 1, 2007. AR 1.[1] She is employed as an administrative assistant in the legal department. AR 254. Her duties include a number of tasks that fall under the heading of both paralegal work and administrative support. AR 446-49. According to Plaintiff "[t]he material duties of her regular occupation also included lifting, pushing, pulling etc. [sic] over 10#s, frequent standing, sitting, stooping, kneeling, and crouching." ECF No. 36, Pl. Mot. Reverse Br. at 1. "The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 . . . ("ERISA")." ECF No. 37, Def. Mot. Affirm Br. at 6.

## A.

According to McKenna's medical history, she has been experiencing lower back pain since at least June 25, 2010. AR 475. On June 29, 2010, McKenna underwent an MRI that revealed degenerative changes, but no apparent impingement upon any exiting nerve roots. AR

---

[1] For the sake of uniformity, all citations to the administrative record will reference the record's cumulative page numbers in the format AR __.

482. McKenna's pain remained relatively stable until March 28, 2012 when she was admitted to the hospital with back pain. AR 906. She was again admitted to the hospital on April 1, 2012 due to her back pain. AR 362.

After being discharged, McKenna continued to suffer from back pain and was prescribed a course of treatment to help manage the pain. This included facet block injections as well as steroid injections. See, e.g., AR 439. Part of the treatment also involved McKenna visiting a physical therapist over the course of six to eight weeks. AR 253. She was eventually discharged from physical therapy with a notation that her failure to appear to most of her appointments resulted in a lack of progress. AR 283. McKenna attended only three out of the prescribed twelve physical therapy sessions.

**B.**

On August 28, 2012, McKenna sought disability benefits. AR 254-55. Part of the application involves the filing of an Attending Physician Statement ("APS"). AR 263. Doctor Mark Adams completed McKenna's APS. *Id*. In the APS, Dr. Adams diagnosed McKenna with a herniated lumbar disc. AR 263. Plaintiff was indicated as having lower back pain with numbness in her leg. AR 264. In the portion of the APS titled "Objective findings that substantiate impairment" Dr. Adams wrote "L3/4, L4/5 disc collapse, annular tears, headaches." AR 264. Dr. Adams estimated that McKenna would be able to return to work on February 23, 2013. AR 264-65. On October 10, 2012, the plan administrator denied McKenna's claim for long-term disability benefits beginning on September 26, 2014.[2] AR 125-27. The letter of denial notified McKenna that she had the right to appeal the determination.

---

[2] Although McKenna has not worked since March 28, 2012 when she checked into the hospital with back pain, there is a 180 day "Elimination Period" during which claimants must establish disability before receiving long-term disability benefits. AR 1168. A claimant must be disabled for the entirety of the Elimination Period in order for benefits to begin when the 180 day elimination period ends. *Id*. The Schedule of Long Term Disability Benefits

## C.

McKenna filed an appeal to the denial of her benefits on March 8, 2013. AR 318-26. McKenna filed additional medical evidence with her appeal which consisted primarily of records of doctor visits that occurred between her initial denial of benefits and the filing of her appeal. *Id*. Following her initial denial, McKenna was also treated by a nurse, Ms. Holman, on October 18, 2012 and November 13, 2012. AR 294-95; 312. The October 18, 2012 to Ms. Holman visit noted that her pain was "a current score of 7-8/10." AR 293. It documented continued tenderness in McKenna's spine but also found "right lateral twisting positive, left lateral twisting positive, right lateral bending positive, left lateral bending positive." AR 294. McKenna's deep tendon reflexes were also normal on both sides and she had a "steady, even gait." AR 294-95. On November 13, 2012, McKenna's pain was still "a current score of 7-8/10" with "an average pain scale of 6-7/10." AR 311. But once more, McKenna had normal deep tendon reflexes, a "steady, even gait", and normal strength in her lower extremities rated at a 5/5. AR 312. Furthermore, she had positive leg raises to ninety degrees on both sides. *Id*.

McKenna also had another MRI performed following her initial denial of benefits and included the results with her appeal. The MRI was of her lumbar spine and took place on October 31, 2012. AR 616-17. This MRI was compared to the MRI performed on April 4, 2012 when McKenna was hospitalized. *Id*. The MRI reflected that there was "[s]table degenerative changes of the lumbar spine with disk space narrowing at the L3-4 and even more pronounced at the L4-5 disk levels with diffusely bulging disk but without focal disk herniation, spinal canal or significant neural foraminal stenosis noted." *Id*. The April 4, 2012 MRI found that "[a]t the L4-5

---

attached to the Plan, AR 1197, defines the Elimination Period, as relevant to McKenna, as the "first 180 days of a period of disability." *Id*. "No benefit is payable for or during the elimination period." AR 1168. The 180 day Elimination Period ended for McKenna on September 25, 2014 and so long-term disability benefits would have been payable for the first time on September 26, 2014.

disk level there is "disk desiccation and disk space narrowing and posterior bulging disk with mild posterior peripheral T2 hyperintensity without focal disk protrusion, spinal canal or neural foraminal stenosis" and that there was "disk space narrowing and disk desiccation at the L3-4 level with diffusely bulging disk and small central disk protrusion indenting the central ventral aspect of the thecal sac but without other focal disk protrusion, spinal canal or neural foraminal stenosis." AR 354.

The evidence provided for McKenna's appeal also included reports from Dr. Adams from October 22, 2012 (AR 296), November 27, 2012 (AR 314), December 3, 2012 (AR 315), and March 11, 2013 (AR 181). Both the October 22, 2012 visit and the December 3, 2012 visit record McKenna's pain score at four. The October visit also notes that McKenna is attending physical therapy, but by November it is noted that she is no longer attending. There is no discussion of the result of physical therapy. On December 3, 2012, Dr. Adams records that the "patient has a slow gait" and that her deep tendon reflexes are "diminished at the ankles." AR 316. Dr. Adams also noted that the straight leg raise is positive. Id.

By March 11, 2013, however, McKenna's pain score had reduced to three and she was found to have a "steady and even gait" with "no muscle wasting, edema or cyanosis" in her extremities. AR 182. Dr. Adams does note on this occasion, however, that McKenna is suffering from "lumbar spasms and reduced ROM [(range of motion)]" and is "disabled with pain." AR 182-83.

**D.**

Doctor Stuart Rubin was employed by the Plan to conduct a review of McKenna's medical information on appeal. AR 214-18; 204-08. The Plan reversed the initial denial of benefits and found that functional impairment was supported "from September 25, 2012 through

February 23, 2013".[3] AR 191. Dr. Rubin referenced the treatment McKenna had undergone prior to December 3, 2012 in support of his finding of disability. AR 217. Like McKenna's treating physician, Dr. Adams, Dr. Rubin reasonably believed that these symptoms would improve after two-and-a-half months. AR 191.

Dr. Rubin found that the lack of medical evidence supporting impairment beyond that period favored ending benefits on February 23, 2013, as Dr. Adams had initially suggested. AR 217. This review was conducted prior to receiving McKenna's March 11, 2013 medical report. Dr. Rubin tried on numerous occasions to discuss McKenna's medical information with Dr. Adams but he was unsuccessful in reaching Dr. Adams. CITE.

Upon review of the March 11, 2013 report, Dr. Rubin did not alter his conclusions. AR 207. He noted that there was nothing in the newest report that supported a finding of disability. *Id*. The report notes that there McKenna suffers from pain but there was no objective evidence of the sort that supported her earlier disability. *Id*. Dr. Rubin found that the "specific qualifications of disability are not noted in the records" despite the suggestion by Dr. Adams that McKenna could not return to work. *Id*.

On May 28, 2013, the Plan finalized its appeal decision. McKenna's prior denial of benefits was overturned and the Plan awarded her 'own occupation' benefits for the period between September 25, 2012 and February 23, 2013. AR 158. McKenna appealed the decision to this Court on June 18, 2013. ECF No. 1.

**E.**

McKenna submitted three more recorded visits with Dr. Adams following Aetna's appeals decision. These visits took place on June 10, 2013 (AR 178), June 24, 2013 (AR 175),

---

[3] Dr. Rubin's initial notation of disability lists February 3, 2013 as the end-date of disability. Since Dr. Rubin refers in all other relevant areas to an end date of February 23, 2013, the reference to February 3 will be construed as a clerical error.

and July 1, 2013 (AR 172). On June 10, 2013, McKenna claims that her condition has deteriorated. Dr. Adams records her pain score at four and notes that she is still suffering from lumbar spasms. AR 178-79. He also recorded McKenna as having a stooped gait. Id. In his treatment plan, Dr. Adams writes that McKenna "is disabled because of her back and I am not clear as to the 2 months in insurance letter[.] She is trying to avoid surgery but given her ongoing and progressive complaints it may be inevitable." AR 180.

On June 24, 2013, McKenna had another MRI performed on her back. AR 175. The MRI was compared with her two prior MRIs. The impression following the test was that McKenna had "[s]table degenerative disk disease and facet joint arthropathy in the lumbar spine at the L3-4 and L4-5 levels without evidence of substantial spinal canal or neural foraminal stenosis." AR 176.

In McKenna's last visit with Dr. Adams on July 1, 2013 her pain score is recorded as a three. She also is found to still have a positive straight-leg raise on the left and still "no muscle wasting, edema or cyanosis" in her extremities. AR 173. While Dr. Adams records diminished sensation, he finds that McKenna has a "steady gait." AR 173. Dr. Adams also found that a "[l]oss of disc space ht [sic] at L3/4 an [sic] L4/5 contributing to NFN [(neural foraminal narrowing)]. AR 174. This led to his impression that McKenna suffers from "Lumbar disc herniation with radiculopathy" and "Low back pain." AR 174. He once again wrote that McKenna "continues to be limited in her activity and suffering with pain". AR 174. McKenna contends that consideration of these later visit reports favors a continued finding of disability.

## II.

Both parties agree that the proper standard of review to be employed by the Court is the de novo standard. ECF Nos. 17 & 18. The de novo standard is appropriate "unless the benefit

plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998). Neither party claims that the plan administrator has such authority here. Thus, the Court's role "is to determine whether the administrator or fiduciary made a correct decision[.]" *Perry v. Simplicity Eng'g, a Div. of Lukens Gen. Indus., Inc.*, 900 F.2d 963, 966 (6th Cir. 1990)

## III.

McKenna challenges the determination of the plan administrator that she was not disabled after February 23, 2012. She claims that the plan administrator erred in two respects. First, the administrator failed to give proper weight to the opinion of her treating physician, who determined she was disabled past February 23, 2012. Second, the administrator improperly found that she was no longer disabled after February 23, 2012, thus terminating benefits it had already awarded her. The Plan claims that the administrator's decision not to fully credit McKenna's treating physician and deny benefits after February 23, 2012 was proper in light of the objective evidence available in the administrative record. The Plan moves the Court to affirm the administrator's decision, while McKenna seeks a reversal of her denial of benefits.

## A.

McKenna alleges that the plan administrator failed to give proper weight to the opinions of her treating physician. The Plan counters that no rule requires deference to a treating physician but that a treating physician's opinion is just one factor to be considered amongst many. The Plan is correct that the so-called "treating physician rule" that prevails in Social Security cases does not apply in ERISA disputes. *See Kalish v. Liberty Mut./Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 508 (6th Cir. 2005) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003) ("Nothing in the Act itself . . . suggests that plan administrators must accord special

deference to the opinions of treating physicians."). But McKenna contends "the opinions of treating physicians who have actually examined plaintiff will outweigh the opinions to the contrary of physicians who have merely performed a one-time 'IME' or undertaken a 'cold' review of the medical file." ECF No. 36, Pl. Mot. Reverse Br. at 20.

The Sixth Circuit "find[s] nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005). Yet "the failure to conduct a physical examination—especially where the right to do so is specifically reserved in the plan—may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Id.* at 295. Here, the Plan reserves "the right and opportunity to have a **physician** of its choice examine any person who is requesting certification or benefits for new and ongoing claims." AR 1180 (emphasis in original). The fact that the Plan did not conduct a physical examination of its own is not dispositive. "[R]eliance on a file review does not, standing alone, require the conclusion that [a plan administrator] acted improperly." *Calvert*, 409 F.3d 286, 295. It does, however, call for greater scrutiny of the plan administrator's opinion.

Where a plan administrator relies on a file review, rather than a physical examination, in reaching his or her conclusion that the complainant should be denied benefits, his or her disagreement with the treating physician must be explained. *See Kalish*, 419 F.3d at 509 (citing *Calvert*, 409 F.3d at 296). Mere conclusory assertions that the record does not support the treating physician's opinions are insufficient. *Id.* For example, in *Kalish*, the complainant was denied benefits after the plan administrator conducted a paper review that "dedicate[d] only one page to analyzing [the complainant's medical] records." *Id.* That one page "contain[ed] little more than . . . conclusory assertions to the effect that 'the available records do not document a

need for restrictions or limitations that would necessarily preclude the employee from performing the duties of his job as described.'" *Id*. The Sixth Circuit held that such cursory review by the plan administrator did not justify the denial of benefits because "[a]t no point . . . does [the reviewing physician] explain how someone with Kalish's condition . . . could be expected to function on a daily basis" in the complainant's former position. *Id*.

While McKenna relies heavily on *Kalish*, the facts of her case are inapposite. The paper review of McKenna's records did not ignore the aspects that McKenna now claims were disregarded. The appeals review made specific note of McKenna's doctor visit on March 11, 2013. In particular, it identified the findings of McKenna's treating physician that her gait was steady, her leg extension had improved, and that her pain had reduced to a 3/10. AR 191.

It is true that McKenna's treating physician had noted that her condition would improve by February 23, 2012. But that was not the sole item of information on which the peer reviewer relied. As noted above, the information from the March 11, 2013 visit was also reviewed. The information from that visit was not inconsistent with the pain that McKenna had been feeling prior to her approved leave period when she was able to work. AR 207. During that earlier period she reported her pain as high as 10/10. AR 513. There is nothing in the reviewer's decision to indicate that he made conclusory assertions about McKenna's disability without fully considering the findings of her treating physician, particularly in light of The Plan conducting only a paper review.

McKenna claims that the file review failed to account for the results of the diskogram conducted on November 27, 2012. Specifically, the finding that her condition matches the diagnosis of a herniated disk was not accounted for. Yet McKenna offers nothing in support of this allegation other than the assertion that the plan administrator would not have denied benefits

if the diskogram was considered. But even if the diskogram was not considered, its results add nothing to McKenna's diagnosis. The diskogram evidences some disk degeneration, but nothing inconsistent with McKenna's MRIs or her doctor reports. AR 314.

### B.

McKenna's next allegation of error by the plan administrator is that the decision ignores her work limitations. According to McKenna's medical history, she is unable to spend long periods walking and cannot lift or move more than ten pounds. McKenna claims that these limitations preclude her from performing her job which, she says, requires:

- performing repetitive tasks that required her to electronically load each case and
- related documents into the computer system;
- preparing various court documents;
- performing various typing and data input on the computer throughout the day as
- well as monitoring the computer for receipt of case related documents;
- traveling to out of office meetings;
- gathering, bates numbering, copying and scanning various documents;
- lifting and carrying case files as well as various records and file related materials;
- lifting, pushing, pulling etc. over 10#s;
- frequent standing, sitting, stooping, kneeling, and crouching.

ECF No. 39, Pl. Resp. Br. at 4. The Plan contends that there is nothing in McKenna's job description that obligates her to regularly move more than ten pounds as a condition of employment.

Reviewing McKenna's job description as provided in the administrative record corroborates the Plan's position. This does not end the inquiry, however. It may be that McKenna's "actual duties were so far outside the scope of [The Plan's] descriptions" that it

- 11 -

would be improper for the reviewer to rely on them. *Frazier v. Life Ins. Co. of N. Am.*, 725 F.3d 560, 569 (6th Cir. 2013) cert. dismissed, 134 S. Ct. 1057, 188 L. Ed. 2d 144 (U.S. 2014). McKenna offers no proof that her job required her to move more than ten pounds on a regular basis such that they were necessary to her job performance. She also makes no claim that her purported job descriptions were "so far outside the scope" of those found in the administrative record, that those in the record should be disregarded. On the contrary, when she makes representations about her job responsibilities, including the weight restriction, she cites to her job responsibilities in the administrative record, which notably do not include the weight restriction. ECF No. 39, Pl. Resp. Br. at 4. Nothing suggests that the plan administrator improperly determined that McKenna was able to perform the duties of her current occupation.

### C.

Finally, McKenna alleges that the plan administrator improperly determined that she had improved and so incorrectly revoked her benefits.[4] McKenna is correct in noting that a revocation of benefits is not lightly considered. *See Morris v. Am. Elec. Power Long-Term Disability Plan*, 399 F. App'x 978, 984 (6th Cir. 2010) (Surely it is reasonable to require a plan administrator who determines that a participant meets the definition of "disabled," then reverses course and declares that same participant "not disabled" to have a reason for the change; to do otherwise would be the very definition of "arbitrary and capricious."). A revocation of benefits by a plan administrator does not mandate reversal at the district court. Instead, it "is a circumstance that weighs against the propriety of the Hartford's decision to discontinue those payments." *Rabuck v. Hartford Life & Acc. Ins. Co.*, 522 F. Supp. 2d 844, 872 (W.D. Mich. 2007) (citing *McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586, 589 (8th Cir.2002)).

---

[4] To be accurate, McKenna's benefits were not "revoked." Rather, on appeal, the plan administrator overturned its prior decision to deny benefits and reinstated benefits retroactively between September 25, 2012 and February 23, 2013.

To approve such a decision by the plan administrator there must be some reason articulated for the revocation of benefits. *See McCollum v. Life Ins. Co. of N. Am.*, 495 F. App'x 694, 704 (6th Cir. 2012) ("[I]n those circumstances, the plan administrator must have some reason for the change based on any number of factors. *Morris*, 399 Fed. App'x at 984 (noting factors include evidence of improvement, a better definition of the participant's medical condition, or any new skills the participant has acquired)."). As outlined above in discussing the administrator's paper review, adequate reason was given by the administrator for why the decision was made to terminate benefits at a specific date. The administrator pointed to the fact that McKenna's pain had significantly decreased and that her gait had normalized. AR 191. On the basis of this justification, there is no cause to reverse the administrator's decision to terminate benefits on February 23, 2012.

## IV.

On August 25, 2014, The Plan filed a motion to strike Exhibit A to Plaintiff's Brief in Support of Her Motion to Reverse. ECF No. 41, Def. Mot. Strike. In the motion, Defendant argues that the timeline of relevant events that Plaintiff attached to her motion to reverse impermissibly expands the record in violation of Sixth Circuit ERISA case law and her brief in violation of this Court's local rules. *Id.* The Sixth Circuit has said that "[g]enerally, a court reviewing a party's ERISA claim cannot consider evidence outside the Administrative Record." *Likas v. Life Ins. Co. of N. Am.*, 222 F. App'x 481, 485 (6th Cir. 2007) (citing *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 619 (6th Cir.1998) (Gilman, J., concurring)). Evidence beyond the record is permitted if it "is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision." *Id.* McKenna makes no claim that her chronology serves such a purpose. Rather, she claims that the chronology is merely an aid for the Court in consideration of

- 13 -

her claims, akin to that provided during the plan administrator's review. See AR 329. It is not necessary to provide the Court with such aid. Even if it were, using it would violate the law of the circuit.[5]

Because Exhibit A to Plaintiff's Motion to Reverse is not permissible ERISA evidence, it will be construed as argument. Local Rule 7.1(d)(3) limits briefs in support of motions to twenty-five (25) pages. Counting the exhibit as argument in support of McKenna's motion expands her brief to forty-two (42) pages. McKenna asks that she be granted permission to file excess pages "[t]o the extent this Honorable Court may consider the updated chronology a technical violation of L.R. 7.1 (D)(3) [sic][.]" ECF No. 43, Pl. Resp. Br. at 4. This request is untimely and will not be granted. To bring McKenna's motion into compliance with the local rules, the exhibit will be stricken.

## V.

Because there is nothing justifying a reversal of the administrator's decision to terminate benefits on February 23, 2012, Plaintiff McKenna's motion to reverse the plan administrator's decision will be denied and Defendant The Plan's motion to affirm the plan administrator's decision will be granted. The Plan's motion to strike will also be granted.

Accordingly, it is **ORDERED** that Plaintiff McKenna's Motion to Reverse (ECF No. 36) is **DENIED**.

It is further **ORDERED** that Defendant Aetna's Motion to Affirm (ECF No. 37) is **GRANTED**.

---

[5] McKenna asserts that "Defendant cites not a single case or any other authority that suggests that a party is precluded from providing the Court a summary of the documents contained in the administrative record." ECF No. 43, Pl. Resp. Br. at 3. But McKenna brings forward no authority to suggest that this document falls outside the Sixth Circuit's bar on non-administrative record evidence articulated in *Likas*.

It is further **ORDERED** that Defendant Aetna's Motion to Strike (ECF No. 41) is **GRANTED**.

It is further **ORDERED** that Plaintiff McKenna's Complaint (ECF No. 1) is **DISMISSED**.


Dated: October 23, 2014                         s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 23, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS